UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANN L. BAILEY and
LINDA MAY,

       Plaintiffs,                                  Civil Action No. 09-13757
                                                                   HON. BERNARD A. FRIEDMAN
vs.

YOUR SOURCE MANAGEMENT
GROUP, INC., et al.,

       Defendants.
_____/

**OPINION AND ORDER**

**I.    Introduction**

This matter is before the Court on Defendant, YourSource Management Group, Inc.'s Motion for Summary Judgment. Plaintiffs, Ann L. Bailey and Linda May, filed a response, and Defendant filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without oral argument.

This case contains claims of discrimination and retaliation. Plaintiffs have settled their claims with all defendants except YourSource Management Group, Inc. Defendant contends that it never employed Plaintiffs. Defendant further argues that even if it were Plaintiffs' employer, it can not be held liable under Plaintiffs' theories of liability, because it did not exercise the requisite amount of control over Plaintiffs to warrant the imposition of liability.

**II.    Facts**

Defendant BDB Properties, LLC ("BDB") is a residential apartment properties company with multiple property locations. Plaintiff Linda May began working at BDB as a leasing agent

in 1998, and was eventually promoted to BDB's VP of operations.  Plaintiff Ann Bailey began working for BDB as a leasing agent in 2003.

Defendant YourSource, Inc. is a professional employer organization ("PEO") that contracts with businesses to administer payroll, benefits, unemployment, workers' compensation, and various other human resources functions.

HR Direct, LLC, a co-defendant, is also a PEO, and contracts with businesses to perform similar functions.  In 2007, HR Direct contracted with BDB to perform certain services under a co-employment agreement.  Dft. Exh. 1, Co-Employment Agreement.  Plaintiffs state that HR Direct is one of Defendant's companies, and that HR Direct was assigned to BDB by Defendant.

Defendant states that even if HR Direct had a co-employment agreement with BDB, such agreement did not include Defendant, and Defendant not co-employ Plaintiffs.  However, Plaintiffs contend that Defendant fulfilled all of the duties of the HR Direct/BDB contract, including, but not limited to, BDB employees completing YourSource applications, BDB employees completing YourSource forms, BDB employees being given YourSource employees' contact information should they have any questions, YourSource was listed as employer of BDB's employees to the unemployment insurance agency, and "YourSource" appearing on the cover of the BDB handbook.  Pltf. Exh. 1, 4, 5, 6.  Diane Oberlitner, a human resource manager, was assigned by Todd Lancaster, the YourSource President, to be the BDB human resource manager for BDB employees. Dft. Exh. 1.  In addition, when BDB terminated its contract with YourSource, its CFO sent a notice to all BDB employees regarding their employment status referencing them as "All employees of BDB Properties/HR Direct, LLC/YourSource Management Group."  Dft. Exh. 21.

2

Brian Di Bartolomeo was the President and Managing member of BDB. Plaintiffs state that on October 25, 2007, May met with Oberlitner and complained to Oberlitner that Bartolomeo's actions and behavior was affecting employees in the workplace. Specifically, May told Oberlitner that Bartolomeo was flirtatious with young female staff members, and that other employees had complained to May repeatedly about how female employees were being sexually harassed by Bartolomeo. Complaints of this behavior by BDB employees continued into 2008. On June 3 and 4, 2008, May went to a BDB worksite in Troy to discuss these complaints with Bartolomeo. May states that she told him that the workplace was suffering because of his actions and sexual advances toward employees, and that BDB employees felt that their workplace was continuously being disrupted by his sexual actions and promotions of younger employees who were not qualified for their positions, in exchange for return of his sexual flirtation.

On June 4, 2008, Bartolomeo contacted Oberlitner to implement his decision to eliminate the BDB position of VP of Operations. His decision was discussed with Oberlitner and Lancaster. May was terminated on June 6, 2008, and was told that the termination was because of "elimination of job." On August 19, 2008, May filed a Charge of Discrimination with the EEOC alleging age and sex discrimination.

On August 6, 2008, Defendant Bailey filed a Charge of Discrimination with the EEOC against BDB alleging age discrimination and retaliation discrimination. On August 11, 2008, Bailey was called into the office by her manager and questioned about the EEOC filing. She contends that she was then told that she was being suspended for the EEOC filing, her keys that she used at the property she worked at were taken from her, and she was sent home without

notice of when she would return. When Bailey returned to work, her keys were not returned to her. She states that her keys were returned to her in December 2008, after she signed a form that other BDB employees did not have to sign in order to be allowed keys to BDB properties. She also contends that she received multiple write-ups for alleged minor offenses after filing her charges of discrimination with the EEOC, and on August 21, 2008, Oberlitner gave her a warning for telling a co-workers that he filed her Charge of Discrimination with the EEOC when her keys were not returned to her. She received additional warning notices in October 2008 and February 2009.

### III.   Summary Judgment Standard

Summary judgment is proper where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. In considering a motion for summary judgment, the Court will construe all facts in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). There are no genuine issues of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id. If the movant carries its burden of showing an absence of evidence to support a claim, then the nonmovant must demonstrate by affidavits, depositions, answers to interrogatories, and admissions that a genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986).

### IV.   Analysis

#### A.   Employment Relationship

Defendant argues that YourSource was not Plaintiffs' employer, stating that because the Elliott Larsen Civil Rights Act ("ELCRA") and Title VII prohibit discrimination against

"employees," it is fundamental that plaintiffs' claims first demonstrate an employer relationship with YourSource.  Defendant states that BDB entered into its PEO "co-employment" relationship with HR direct, and that a similar contract did not exist and is not alleged between YourSource and BDB.

Further, Defendant argues, even if YourSource was a technical employer, Plaintiffs' attempt to hold YourSource liable under Title VII and the ELCRA under a joint-employer theory is unsuccessful.

In response, Plaintiffs argue that YourSource, through HR Direct which is one of its many companies, contracted with BDB to become the joint employer of Plaintiffs.  They state that after BDB executed the contract with HR Direct, HR Direct was never again referenced as BDB's PEO, and YourSource fulfilled all of the obligations of the contract, acting in place of HR Direct as the PEO for BDB.  They note that YourSource employee Oberlitner was assigned by YourSource's president to the BDB account, that documents distributed to BDB employees contained the "YourSource" name and contact info, and that Oberlitner's business card had only the name YourSource.  Further, YourSource was listed as the employer of all BDB employees to the unemployment insurance agency.

Further, Plaintiffs claim that the contract between BDB and HR Direct, which Defendant actually fulfilled, establishes that HR Direct would retain control of the BDB employees sufficient to establish a joint employer relationship under Title VII.  The contract clearly stated that "HR Direct retains the right to hire, fire, reassign, discipline, compensate, direct, control and otherwise manage Employees. . ."  Pltf. Exh. 3.

When determining whether a joint employer relationship exists, "courts consider whether

5

one defendant has control over another company's employees sufficient to show that the two companies are acting as 'joint employer' of those employees." Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993 (6th Cir. 1997). Factors to consider to determine whether Defendant may be deemed an employer under the joint employer doctrine include whether Defendant "exercised sufficient control over employees to constitute a joint employer, [which] is a factual determination requiring the Court to consider such factors as authority to hire, fire and discipline employees, promulgation of work rules and conditions of employment, issuance of work assignments and instructions, and supervision of employees' day-to-day activities." EEOC v. Regency Windsor Mgmt. Co., 862 F.Supp. 189, 191 (W.D.Mich. 1994).

Here, regardless of whatever sort of contractual relationship existed between BDB and HR Direct, there are significant allegations and enough documentary exhibits to create a question of fact regarding whether YourSource operated as a joint employer of Plaintiffs. The PEO employees were YourSource employees, and YourSource documents were used through the human resources process from hiring through firing, and in creating the employee handbook. Accordingly, the Court finds that there is a question of fact regarding whether YourSource is considered a joint employer of Plaintiffs.

### B. Retaliation

Defendant next argues that it is entitled to summary judgment on Plaintiffs' claim of retaliation, because there is not any evidence that either Plaintiff suffered an adverse employment action as a result of engaging in protected activity.

The ELCRA and Title VII prohibit employers from retaliating against an employee for exercising her rights under Title VII and the ELCRA. To establish a retaliation claim, a plaintiff

must show 1) she engaged in a statutorily protected activity; 2) defendant knew she engaged in the activity; 3) she suffered an adverse employment action or was subjected to retaliation by a supervisor; and 4) the adverse action or harassment was causally related to the protected activity.

Under this Circuit's burden shifting framework, Plaintiffs bear the initial burden of establishing a *prima facie* case of retaliation. "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir.2000). "Once a prima facie case is established, the burden of producing some non-discriminatory reason falls upon the defendant." Williams v. Nashville Network, 132 F.3d 1123, 1131 (6th Cir.1997). "If the defendant demonstrates such, the plaintiff then assumes the burden of showing that the reasons given by the defendant were a pretext for retaliation." Id.

May claims that she was retaliated against because she confronted Bartolomeo regarding rumors and innuendo about his relationship with a female property manager. She states that as Vice President of Operations, she had received complaints from other employees about how Bartolomeo's actions at the company was affecting their ability to perform these jobs. She further states that upon hearing these complaints, and witnessing Bartolomeo making a sexual advance toward an employee on June 3, 2008, she felt that she had a responsibility as Vice President of Operations to discuss his actions with him. She states that she met with Bartolomeo on June 4, 2008, and on June 6 2008, she and her daughter were terminated.

As a preliminary matter, Plaintiffs have failed to demonstrate that Bartolomeo's actions constitute either sexual harassment or hostile work environment. While they allege that they witnessed some flirtatious behavior that may have been inappropriate, neither allege that they themselves were subjected to it, and the details of such behavior are insufficient to warrant a

7

finding of either sexual harassment or hostile work environment sufficient to maintain a Title VII or ELCRA claim.  The Supreme Court has explained that not every sexually hostile work environment is actionable under Title VII. To fall within the purview of Title VII, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

However, even if Plaintiffs can not establish that the underlying activities constitute either sexual harassment or hostile work environment, they may still pursue their retaliation claims.  It is unlawful to retaliate against an individual for engaging in a protected activity. Barnett v. Dept. of Veterans Affairs, 153 F.3d 338 (6th Cir. 1998).  To establish engagement in a protected activity, it is not essential that the plaintiff show that the underlying claim of discrimination was meritorious.  Peters v. Jenney, 327 F.3d 307, 320-321 (4th. Cir. 2003). "The inquiry is therefore (1) whether Plaintiffs "subjectively (that is, in good faith) believed" that Defendant had engaged in violative behavior, and (2) whether this belief 'was objectively reasonable in light of the facts,' a standard which we will refer to as one of 'reasonable belief.'" Id. *quoting* Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1312 (11th Cir.2002).  Here, it is objectively reasonable that both May and Bailey believed that Bartolomeo was engaging in sexually harassing behavior.  They had received complaints about his behavior, and had observed such behavior themselves.  Accordingly, their decision to address such behavior through both confrontation and the EEOC complaint was objectively reasonable.

Therefore, the question before the Court is whether May's confrontation of Bartolomeo and Bailey's EEOC complaint were protected activities and, if so, whether they were retaliated

against for engaging in such activities.

### 1. May

While May does not claim that she personally was subjected to Bartolomeo's sexual advances, "[i]ndividuals are also protected under Title VII from discrimination because of their advocacy on behalf of protected class members." Barrett v. Whirlpool Corp., 556 F.3d 502, 513 (6th Cir. 2009). "Title VII and the ELCRA protect employees from retaliation for having opposed an employer's unlawful actions. 42 U.S.C. § 2000e-3(a). . . An employee has engaged in opposing activity when she complains about unlawful practices to a manager, the union, or other employees." Id. at 516.

Here, May alleges that she opposed Bartolomeo's sexual advances toward her co-workers. She further alleges that she complained about Bartolomeo's behavior directly to him, as well as to other employees. Two days later, she was terminated. In *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008), the Sixth Circuit held that when an employer immediately retaliates against an employee upon learning of protected activity, temporal proximity is enough to demonstrate retaliation.

May has demonstrated a *prima facie* case of retaliation. Defendant has not provided a non-discriminatory reason for May's termination, other than to submit the unsupported assertion that her job was "eliminated." May's claim for retaliation may proceed.

### 2. Bailey

Bailey claims that she was retaliated against because of her association with her sister and because of the charges that she filed with the EEOC. The alleged retaliation consisted of a brief suspension with pay, and the temporary taking away of her keys. However, she was not

demoted or laid off, and her wages were not reduced. The Supreme Court has explained that "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. As we have explained, the Courts of Appeals have used differing language to describe the level of seriousness to which this harm must rise before it becomes actionable retaliation . . . In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (2006). Here, the Court finds that the actions Bailey complains of do not amount to an adverse employment action or retaliation by a supervisor. The Court does not believe that the actions complained of are such that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination."

In addition, Bailey claims that she suffered retaliatory harassment following her EEOC charge. She alleges that in addition to the actions taken against her described above, including her brief suspension and the removal of her keys, she received three "employee warning notices," and was not given her work schedule in advance, as other employees were. Under *Morris v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2000), retaliatory harassment by a supervisor can be actionable in a Title VII case. However, even in a retaliatory harassment matter, the alleged actions must be "severe and pervasive." For example, the Sixth Circuit in *Morris* found that allegations that a supervisor "(1) visited the [place of employment] unaccompanied a total of fifteen times, and called [Plaintiff] on the telephone over thirty times . . . solely for the purpose of harassing [Plaintiff]; (2) drove to the [place of employment] on

several occasions, and simply sat in his truck outside the Department building, looking in [Plaintiff's] window and making faces at her; (3) followed [Plaintiff] home from work one day, pulled his vehicle up beside her mailbox, and gave her "the finger"; (4) destroyed the television [Plaintiff] occasionally watched at the [place of employment]; and (5) threw roofing nails onto her home driveway on several occasions [is] behavior [that] clearly constitutes more than simple teasing, offhand comments, and isolated incidents."  Id. at 793.

Here, Plaintiff's claims do not rise to a level of "severe and pervasive" harassment. Plaintiff Bailey's retaliation claims must be dismissed.

### C. Age Discrimination

Defendant's motion argues that it is entitled to summary judgment on Plaintiffs' claims of age discrimination where there is no evidence that they suffered an adverse employment action because of their age.  Plaintiffs did not respond to this argument in their response brief. Plaintiffs have not offered any evidence that their age was considered in any decisions affecting their employment.  Summary judgment on Plaintiffs' age discrimination count is granted.

**V.     Order**

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment on Counts I and II is GRANTED as to Plaintiff Bailey, and is DENIED as to Plaintiff May.

IT IS FURTHER ORDERED Defendant's Motion for Summary Judgment on Counts III, IV and V  is GRANTED.

```
                              S/Bernard A. Friedman
                              Bernard A. Friedman
                              Senior United States District Judge
```

Dated:  February 14, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 14, 2011, by electronic and/or ordinary mail.

```
                              S/Felicia Moses for Carol Mullins
                              Case Manager
```